**Affirmed and Memorandum Opinion filed October 1, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00392-CR

---

**DMITRI LEE DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 17-CR-1551**

---

### M E M O R A N D U M   O P I N I O N

Appellant Dmitri Lee Davis appeals his conviction for possession of a controlled substance with intent to deliver, namely methamphetamine between 4 and 200 grams. A jury found appellant guilty and assessed his punishment at 20 years in prison. In two issues, appellant contends that (1) the trial court erred by admitting evidence concerning the extraneous offense of possession of marijuana, and (2) he received ineffective assistance of counsel because his trial counsel failed

to object when the State introduced pills into evidence that had not been tested for methamphetamine. We affirm.

## *Background*

Officer Murphy of the Galveston Police Department began his testimony by detailing his training and experience, particularly as it related to drug investigations. He stated that his training included drug recognition schools. Murphy further testified that on March 14, 2017, while on patrol, he initiated a traffic stop of appellant's vehicle for speeding and failure to stop at a stop sign. Murphy said that when he made contact with appellant, appellant was acting "nervous and . . . a little worried." Murphy smelled the odor of marijuana emanating from appellant's vehicle and saw an open bottle of alcohol in the vehicle. Murphy also observed what he described as "a large amount of narcotics in the door."[1] A subsequent search of appellant's vehicle uncovered what Murphy described as a "[b]ag full of Ecstasy pills" and several bags of hydroponic marijuana.[2] Murphy explained that the 87 pills in the bag were MDMA pills, which he said stood for the chemical components in methamphetamine-based Ecstasy.

A video recording taken from a camera in Murphy's patrol car showed the traffic stop and the recovery of the bags from the door of appellant's vehicle. Murphy initially placed the bags on the roof of appellant's vehicle but then moved them to the hood of his patrol car, directly in front of the video camera. In the video recording, appellant can be heard expressing surprise regarding the alleged presence of drugs in his vehicle, and he said that he had just bought the vehicle about a week before. Murphy testified that appellant's insurance information

---

[1] It is not entirely clear from the testimony how much of the drugs Murphy could see when the door was closed.

[2] The marijuana apparently was contained in 22 separate bags, with approximately 20 of the small bags in one larger bag and two of the smaller bags loose in the door.

2

showed that he had purchased the vehicle longer ago than that, but Murphy was not specific.

Murphy further explained that the number of Ecstasy pills recovered would not have been for personal use but could have been sold in smaller numbers for a profit. He similarly said that the amount of marijuana recovered "would probably go bad" before an individual could have used it all. When the prosecutor asked Murphy about the value of the marijuana if it was portioned for sale, appellant's counsel objected that "that's not the offense charged." In a discussion before the bench, the prosecutor argued that the testimony regarding the volume and value of the marijuana—along with the fact that it was divided into 22 smaller bags—was relevant to show appellant also possessed the methamphetamine pills with the intent to deliver. Appellant's counsel countered that "that would be fine" if appellant was on trial for possessing marijuana instead of methamphetamine. The prosecutor further asserted that the evidence regarding the pills was contextual. The trial judge overruled the objection.

Murphy then testified that the marijuana had a resale value of around $800 to $1000, and the 87 pills would have a value of around $5 apiece or $435. Murphy opined that the number of pills, the amount of marijuana, and the fact that the marijuana was in 22 separate bags made "it pretty obvious that it's to be delivered as opposed to just consumed."

The prosecution offered into evidence the two "evidence packages" in which Murphy had placed the pills and the marijuana. Defense counsel objected to Exhibit 3, the package containing the marijuana, on relevance grounds but did not object to Exhibit 2, the package containing the pills. The trial court admitted both exhibits into evidence. On cross-examination, Murphy stated that he did not recall finding a large amount of cash on appellant or any scales, measuring devices, or

3

other paraphernalia that might typically be in the possession of a drug dealer.

Jennifer Hatch, a forensic scientist with the Department of Public Safety Crime Lab, began her testimony by explaining how she tests alleged controlled substances for their composition. She said that per lab policy, she separated the pills in this case into two groups according to their color and imprint. She then tested 19 of the 87 pills and determined that they contained methamphetamine. Hatch explained that also per lab policy, she stopped testing when the weight of the pills tested reached over 4 grams.[3] This is why she only tested 19 of the pills. Hatch also tested the marijuana and verified that it was in fact marijuana. During cross-examination, Hatch agreed that as a scientist, she would not feel comfortable testifying that the untested pills contained methamphetamine.

Hatch's lab report, which was also admitted into evidence, showed that she tested 13 white pills and 6 red pills. The report listed the remaining pills simply as "numerous multicolored tablets." The report further revealed that she sampled 16 of the marijuana bags, and "[t]he statistical sampling plan used indicates a 95% confidence that at least 90% of the items will have the reported results."

In its charge, the trial court instructed the jury regarding extraneous offenses, including that they could only be considered "in determining the intent, knowledge, design, motive, opportunity, preparation, plan, or scheme of the Defendant, if any, in connection with the offense . . . alleged against him in the indictment." The jury found appellant guilty, and after a punishment phase in which evidence of numerous prior offenses was presented, assessed his punishment

---

[3] The State has to prove only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight. *Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003) (citing Tex. Health & Safety Code § 481.002(5)); *see also Graham v. State*, 201 S.W.3d 323, 329 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

at 20 years in prison.

## *Extraneous Offense Evidence*

In his first issue, appellant contends that the trial court erred in admitting evidence regarding an extraneous offense of possession of marijuana. Specifically, appellant contends that the evidence was inadmissible both because (1) the State failed to provide notice of its intent to introduce evidence of the extraneous offense, and (2) the evidence was offered to prove appellant's character and action in conformity therewith in violation of Texas Rule of Evidence 404(b). The State argues that appellant has waived his complaints by failing to preserve them in the trial court. *See* Tex. R. App. P. 33.1; *see also Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016) ("Rule of Appellate Procedure 33.1 requires a litigant to present his objection to the trial court by a timely request, objection, or motion, that is sufficiently specific to make the trial court aware of his complaint."). We agree with the State.

Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character, but it may be admissible if it has relevance apart from character conformity, such as when it provides proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident or when evidence of multiple crimes are connected such that full proof of any one of them cannot be given without evidence of the others. *See* Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Whether extraneous offense evidence has relevance apart from character conformity is a question for the trial court. *Devoe*, 354 S.W.3d at 469. We therefore review a trial court's ruling on the admissibility of extraneous offense evidence under an abuse of discretion standard. *Id*. We must affirm if the trial court's ruling was within the "zone of reasonable

disagreement." *Id.* A trial court generally does not abuse its discretion in admitting extraneous offense evidence if such evidence was "relevant to a material, non-propensity issue." *Id.* We will affirm if the trial court's ruling was correct on any theory of law applicable to the case. *Id.* Additionally, under Rule 404(b)(2), on timely request by a defendant, the State must provide reasonable notice before trial that it intends to introduce extraneous offense evidence. Tex. R. Evid. 404(b)(2).

As will be discussed in more detail below, the State elicited evidence of appellant's possession of marijuana at numerous points during the trial. However, at no point did appellant object to such evidence on the ground that he did not receive notice under Rule 404(b)(2). Accordingly, appellant waived this complaint. *See Vasquez*, 483 S.W.3d at 554; *see also Blackmon v. State*, 80 S.W.3d 103, 107 (Tex. App.—Texarkana 2002, pet. ref'd) (holding lack of objection to State's failure to give notice of intent to use extraneous offense waived issue).

The State first mentioned appellant's alleged possession of "a large amount of marijuana" during its opening argument. Officer Murphy testified that when he first made contact with appellant during the traffic stop, Murphy smelled a strong odor of marijuana. The video recording of the traffic stop and subsequent search of appellant's vehicle showed Murphy remove the bag of marijuana from the driver's side door of appellant's vehicle and place it first on the roof of appellant's vehicle and then on the hood of Murphy's patrol car immediately in front of the camera. Murphy narrated the video for the jury and expressly stated that the large bag he pulled from appellant's vehicle contained marijuana. He further explained that his use of the word "hydro" in speaking with appellant on the video recording was a reference to hydroponic marijuana. At no time up to this point in the record did appellant object to the evidence regarding his possession of marijuana.

It was only when the prosecutor asked Murphy regarding the value of the

6

marijuana that appellant objected on the ground that "that's not the offense charged." The prosecutor, at least, appeared to interpret this statement as an objection regarding extraneous offense evidence under Rule 404(b) and argued accordingly.

Subsequently, when Murphy was asked about his probable cause to search appellant's vehicle, he again noted that he had smelled marijuana when he first contacted appellant. And Murphy mentioned the marijuana in discussing the organization of the exhibits, and he was asked for and provided a total weight for the marijuana found in appellant's vehicle. Again, appellant lodged no objections to this testimony. When the State introduced Exhibit 3, the bag of marijuana itself, into evidence, appellant objected on relevance grounds, but a relevance objection does not preserve a complaint regarding extraneous offense evidence. *See, e.g., Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999); *Rawlins v. State*, 521 S.W.3d 683, 870-71 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Lastly, when Hatch testified regarding her testing and weighing of the marijuana, appellant again offered no objection.

In order to preserve error on the admission of evidence, a defendant must object each time the inadmissible evidence is offered unless he obtains a running objection or a ruling on his complaint in a hearing outside the presence of the jury. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991); *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Here, appellant only made one arguably valid objection to the evidence that he possessed marijuana despite numerous references to such possession. Appellant did not request or receive a running objection, and he did not request or receive a hearing outside of the jury's presence. Accordingly, appellant waived his Rule 404(b) complaint.

7

We overrule appellant's first issue.

## *Assistance of Counsel*

In his second issue, appellant contends that he received ineffective assistance of counsel because his trial counsel failed to object when the State introduced into evidence pills that had not been tested for whether they contained methamphetamine. As discussed above, Hatch testified that she only tested 19 of the 87 pills because lab policy was to cease testing once the offense threshold was reached, in this case, 4 grams.

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Claims of ineffective assistance of counsel are evaluated under the two-pronged *Strickland* test that requires a showing that counsel's performance was deficient and that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *see also Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Essentially, appellant must show his counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813.

In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing. *DeLeon v. State*,

8

322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

To demonstrate ineffective assistance based on a failure to object to evidence, an appellant must show that the trial court would have committed harmful error by overruling the objection had trial counsel objected. *Donald v. State*, 543 S.W.3d 466, 478 (Tex. App.—Houston [14th Dist.] 2018, no pet.). It is not entirely clear here on what basis appellant believes the untested pills should have been excluded. In his brief, appellant mentions Hatch's testimony that as a scientist she was not comfortable testifying that all of the pills contained methamphetamine, and he discusses the law regarding extraneous offenses, which is set forth in the discussion of the previous issue above. We conclude, however, that appellant has failed to demonstrate that the trial court would have erred had it overruled any such objection to the untested pills.

The evidence concerning the 87 pills recovered from appellant's vehicle included the following. All of the pills were found together in one bag. Murphy, who had training and experience in drug identification, identified the pills as MDMA or methamphetamine-based Ecstasy. Hatch stated that she divided the pills into two groups based on their color and imprint. She then tested 13 white pills and 6 red pills, which all tested positive for methamphetamine. Although Hatch declined to verify as a scientist that all 87 pills contained methamphetamine, she also did not dispute that all of the pills contained methamphetamine.

A reasonable inference from this evidence is that the remaining pills either matched the color and imprint of the white pills Hatch tested or the red pills that she tested.[4] Accordingly, it would also be reasonable to conclude that the untested

---

[4] If the untested pills were not identical in appearance to the tested pills, appellant could have established this at a hearing on a motion for new trial, but he did not. *See generally DeLeon*, 322 S.W.3d at 381.

9

pills were of the same composition as the tested pills; they were all found at the same time in the same bag, and the untested pills had the same color and imprint of one or the other of the tested pills. *See Melton v. State*, 120 S.W.3d 339, 343–44 (Tex. Crim. App. 2003) (holding it was reasonable for jury to infer that all 35-40 "rocks" contained cocaine when they were all found in the same bag, random testing of some rocks was positive for cocaine, and the jury was able to inspect the rocks to determine their homogeneity); *Allen v. State*, 249 S.W.3d 680, 685 n.5 (Tex. App.—Austin 2008, no pet.) ("The random sampling of apparently homogeneous substances contained within a single receptacle is sufficient to prove the whole is contraband."); *see also Dent v. State*, No. 14-14-00536-CR, 2015 WL 1143077, at *3–4 (Tex. App.—Houston [14th Dist.] Mar. 12, 2015, pet. ref'd) (mem. op., not designated for publication) (applying *Melton* in context of pills); *Woods v. State*, No. 14-07-00940-CR, 2009 WL 1975547, at *10 (Tex. App.— Houston [14th Dist.] July 9, 2009, pet. ref'd) (mem. op., not designated for publication) (same).[5]

The untested pills therefore would not have been evidence of an extraneous offense; they were evidence of the charged offense that appellant possessed methamphetamine of between 4 and 200 grams with intent to deliver. Accordingly, appellant has failed to demonstrate that the trial court would have erred in overruling an objection to the untested pills as evidence. Consequently, he has failed to establish that his trial counsel's representation was inadequate for failing to make such an objection. *See Donald*, 543 S.W.3d at 478. We therefore overrule

---

[5] We cite unpublished opinions for comparative and illustrative purposes, not for precedential value. *See Peyronel v. State*, 465 S.W.3d 650, 652 n.8 (Tex. Crim. App. 2015); *Roberson v. State*, 420 S.W.3d 832, 837 (Tex. Crim. App. 2013); *see also* Tex. R. App. P. 47.7(a) (providing that criminal opinions by courts of appeals that are "not designated for publication . . . have no precedential value but may be cited with the notation, '(not designated for publication)'").

appellant's second issue.

We affirm the trial court's judgment.


/s/    Frances Bourliot
          Justice


Panel consists of Justices Christopher, Bourliot, and Zimmerer.

Do Not Publish — TEX. R. APP. P. 47.2(b).

11