

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-24-00188-CR

_____


RICKY ENSLEY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1797827

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

## I.  INTRODUCTION

Appellant Ricky Ensley appeals his conviction for murder.  *See* Tex. Penal Code Ann. § 19.02.  In a sole issue, Ensley complains that the trial court erred by admitting a video of his statement with law enforcement because it was taken in violation of Texas Code of Criminal Procedure Article 38.21.  *See* Tex. Code Crim. Proc. Ann. art. 38.21.  Contending that due process was violated because detectives employed deceptive and coercive interview techniques that were calculated to produce untruthful statements, Ensley maintains that his statement was involuntary and inadmissible.  However, because his issue is unpreserved, we will affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On July 5, 2021, Roberto "Robert" Lopez sat listening to music in his parked car at a RaceTrac gas pump.  After a while, a black male repeatedly approached his vehicle.  Eventually, an unrelated individual, Rodney Bennet, pulled into RaceTrac and saw Robert in his vehicle and the black male leaning against it.  Moments later, when Rodney got out of his car, Robert "was practically right up at [his] tailgate," telling Rodney that the black male had stabbed him.  Rodney observed that Robert had four or five stab wounds.  Emergency services responded to RaceTrac, but Robert succumbed to his injuries.

Law enforcement began an investigation, and detectives spoke to various witnesses and collected several videos from RaceTrac and the surrounding area.

2

Crime Scene Investigators also collected swabs from Robert's vehicle for possible DNA. Detectives learned that one of the collected videos from a nearby motel showed a black male walking around the property. Detectives showed Rodney the video from the motel, and he identified the man as the same person who was standing at Robert's vehicle. Despite this lead, detectives were unable to positively identify the man in the video.

Approximately one month later, detectives were informed that a man named Terry Caraway possibly had information about Robert's murder. Terry spoke with detectives and explained that he had been staying at a motel near the RaceTrac where Robert was murdered. Terry went on to explain that in the early morning hours of July 6, 2021, his friend "Ricky" unexpectedly came to the motel room. Terry noticed several unusual things about Ricky: he was sweating profusely, breathing hard, and wearing a tight, white shirt and gray sweatpants that were dirty and too small. Terry told detectives that Ricky claimed that he was in a little bit of trouble and that he appeared upset, scared, disoriented, and in shock. Ricky disclosed to Terry that he "got into it" with a Mexican guy close to the bars and RaceTrac but that he did not get any money. Ricky imitated a stabbing motion as he explained that he thought he stabbed a man to death.

Detectives followed up on Terry's information and identified Ricky as Ricky Ensley. Detectives contacted Ensley, and he agreed to meet with Detectives Gildon

3

and Williams for a voluntary interview.[1] In an attempt to establish Ensley's presence at the scene, detectives told him that there were videos of him at RaceTrac and the nearby motel, along with his DNA and fingerprints in Robert's vehicle. However, at the time of the interview, none of this evidence was known to detectives. Despite this, detectives further claimed that they knew where Ensley went after the murder but that they wanted to hear his side of the story. The detectives explained that, from their point of view, it appeared as if he waited and sought Robert out to intentionally kill him. They encouraged Ensley to use the opportunity to be honest and explain what really occurred at RaceTrac.

Ensley eventually explained that he spoke with Robert and got into his car, but he denied killing anyone. He told detectives that when he exited the vehicle, there was nothing wrong with Robert. Ensley went on to provide more details about his whereabouts before and after his encounter with Robert, but he provided limited details on what occurred inside the vehicle. When confronted about certain inconsistencies in his account of events, Ensley wavered and backtracked on some of the things that he told detectives. Ensley was not arrested at the conclusion of the interview, but shortly thereafter, detectives applied for and obtained a warrant for his arrest.

---

[1]Although he was not in custody, Ensley was read his rights before the interview, and he said that he understood his rights and agreed to speak with the detectives.

Ensley was arrested and indicted for Robert's murder, and a jury trial commenced.[2] At trial, the State called several witnesses to testify. One witness was Detective Gildon, who testified about his interview with Ensley. When the State offered the video containing his recorded statement, Ensley objected, but the trial court overruled his objection. The jury found Ensley guilty of murder and assessed his punishment at 99 years' confinement.[3] The trial court sentenced him accordingly, and this appeal followed.

## III. STANDARD OF REVIEW

A trial court's evidentiary rulings are reviewed under an abuse-of-discretion standard. *Jenkins v. State*, 493 S.W.3d 583, 607 (Tex. Crim. App. 2016). A trial court's decision is an abuse of discretion only if it falls outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). The trial court's evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

## IV. DISCUSSION

Ensley maintains that the trial court erred by admitting a video interview statement that he made to law enforcement because it violated Article 38.21 of the

---

[2]The case was called to trial in November 2023, but the jury was unable to reach a unanimous verdict, and the trial court discharged the jury. The case was again called to trial in May 2024, and that jury found Ensley guilty of murder.

[3]The indictment contained a repeat offender notice, and the jury found the enhancement true. *See* Tex. Penal Code Ann. § 12.42(c)(1).

Texas Code of Criminal Procedure[4] and due process.[5]  In response, the State argues that Ensley failed to preserve his issue for appeal.  We agree with the State—because Ensley's objection at trial does not comport with his complaint on appeal, the issue is unpreserved for our review.

## A.  APPLICABLE LAW

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling.  Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021).  Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule.  Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).  Because it is a systemic requirement, this court should

---

[4]Under Article 38.21, "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion."  Tex. Code Crim. Proc. Ann. art. 38.21.  A defendant may claim that his statement was not freely and voluntarily made and thus may not be used as evidence against him under several different theories: (1) Article 38.22, § 6 (general voluntariness); (2) *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966) as expanded in Article 38.22, §§ 2 and 3 (the Texas confession statute); or (3) the Due Process Clause.  *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996).

[5]To prevail on a due-process "involuntary confession" claim, a defendant must show (1) that police engaged in activity that was objectively coercive, (2) that the statement is causally related to the coercive government misconduct, and (3) that the coercion overbore the defendant's will.  *Contreras v. State*, 312 S.W.3d 566, 574 (Tex. Crim. App. 2010); *Oursbourn v. State*, 259 S.W.3d 159, 170–71 (Tex. Crim. App. 2008); *see also Colorado v. Connelly*, 479 U.S. 157, 166, 107 S. Ct. 515, 521 (1986).

independently review error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon*, 595 S.W.3d at 223.

An objection must be specific concerning (a) grounds, (b) parts, (c) parties, and (d) purposes. "The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009); *see also Lackey v. State*, 364 S.W.3d 837, 843–44 (Tex. Crim. App. 2012) (setting out three reasons that complaints must be raised in the trial court). Preservation does not require "magic language," however, but turns only on whether the trial court understood the basis of the objection. *Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016); *State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013).

A general or imprecise objection suffices to preserve error only if the objection's legal basis is obvious to the trial court and opposing counsel. *Resendez*, 306 S.W.3d at 313; *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). We determine whether the specific grounds for the objection were apparent from the objection's context by looking at each situation individually. *Heidelberg v. State*, 144 S.W.3d 535, 538 (Tex. Crim. App. 2004); *see also Peyronel v. State*, 465 S.W.3d 650, 653–54 (Tex. Crim. App. 2015) (holding objection that empty gallery would imply appellant did not have support did not preserve argument on appeal that right to

7

public trial violated); *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (holding that error was preserved because "[a]fter receiving a copy of *DeLarue* [*v. State*, 102 S.W.3d 388 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd)] and hearing [a]ppellant's argument, the trial judge should have been aware of the basis of the objection"); *Rivas v. State*, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009) (holding that an objection is not defective merely because it does not identify a rule of evidence); *Clarke v. State*, 270 S.W.3d 573, 580, 583 (Tex. Crim. App. 2008) (holding error preserved when claim on appeal was same essential claim made to the trial court, just "gussied . . . up with legal authority").

While no "hyper-technical or formalistic use of words or phrases" is required in order for an objection to preserve an error, the objecting party must still "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Clark*, 365 S.W.3d at 339 (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)); *see also Laws v. State*, 640 S.W.3d 227, 229 (Tex. Crim. App. 2022); *Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018); *Bekendam v. State*, 441 S.W.3d 295, 301 (Tex. Crim. App. 2014); *Rosseau*, 396 S.W.3d at 555; *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013).

An issue asserted on appeal must comport with the objection made at trial, and therefore, if a party fails to properly object to the alleged errors at trial, these errors can be forfeited. Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Evid. 103(a)(1)(B); *Mosley v.*

8

*State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g); *see also Fierro v. State*, 706 S.W.2d 310, 317–18 (Tex. Crim. App. 1986) (holding that general objection is insufficient to apprise trial court of complaint urged and thus preserves nothing for review). In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time. *See* Tex. R. App. P. 33.1(a)(1)(A).

### 1. UNPRESERVED ISSUE

Here, when the State sought admission of his recorded statement with law enforcement, Ensley timely objected. *See* Tex. R. App. P. 33.1(a)(1). Thus, we review the specificity and grounds of his objection and whether it comports with the complaint he now raises on appeal. *See id.*

Ensley's objection to the recorded statement in question consisted of the following:

> Based on the deception used by sergeant in his interview, we don't feel that this is an accurate indication of an interview with my client given that he's been -- again, deception has been used, and so we don't feel it's a fair and accurate depiction of the interview, so we're going to object.

Usually, for a complaint to be obvious without having been explicitly stated and still satisfy the purposes above, there will be statements or actions on the record that clearly indicate what the trial court and opposing counsel understood the argument to be. *Resendez*, 306 S.W.3d at 315–16. Here, however, Ensley did not explicitly identify the specific grounds of his objection. Although hyper-technical or formalistic use of

9

words or phrases are not required for an objection to preserve an error, Ensley's objection made no mention of Texas Code of Criminal Procedure Article 38.21, the voluntariness of his interview, or that the statements "were obtained through deception that amounted to coercion under [A]rticle 38.21." *See Clark*, 365 S.W.3d at 339. Thus, looking at the context of the objection, Ensley failed to apprise the trial court of the nature or grounds of his complaint. *See* Tex. R. App. P. 33.1(a)(1)(A).

The shared understanding of the parties at the time of his objection is likewise problematic. *Id.* There is nothing in the record to indicate that either the trial court or the prosecutor understood Ensley's evidentiary objection to be complaints of a violation of Article 38.21 of the Texas Code of Criminal Procedure or due process.[6]

The prosecutor explained in his response to Ensley's objection that he did not "believe that's a legal objection to admissibility" and that it "is fertile ground for cross-examination and goes to the weight of the evidence but not the admissibility of the evidence." The prosecutor's response suggests that he did not understand the intended nature of Ensley's objection and that he perceived it to be an attack on the authenticity of the recorded statement—a different ground than Ensley asserts on appeal. *See Resendez*, 306 S.W.3d at 315–16.

---

[6]Although not required, Ensley did not file a motion to suppress the recorded interview with law enforcement on the grounds that his statements were involuntary. Such a motion may have provided greater context and informed the trial court on the grounds for his objection. *See Vasquez*, 483 S.W.3d at 554.

10

We too are unable to readily ascertain the intended grounds for the objection. Ensley maintains that his objection was based on the involuntariness of his statement due to deception by law enforcement, and yet, his objection blunts such an assertion. From our review, Ensley's predominate complaint at trial appears to be one of authentication[7]—that he did not feel that the video was a fair and accurate depiction of the interview. And although he used the word "deception," it is not apparent from the objection's context that Ensley intended to raise a challenge to the admissibility of his statement because of a violation of Article 38.21 or due process.[8] *See* Tex. Code Crim. Proc. Ann. art. 38.21.

In considering the context of the objection—the lack of specificity and unapparent grounds—we conclude that Ensley's complaint on appeal does not comport with the complaint that he made at trial. *Resendez*, 306 S.W.3d at 313;

---

[7]Texas Rule of Evidence 901 governs the authentication of evidence, which provides that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). Here, Ensley complained that the video was not a fair and accurate depiction of his interview. Such a statement ostensibly appears to challenge the authentication of the evidence.

[8]Without reaching the issue's merits, we note that "it is well established that [law enforcement's] lying about the state of the evidence is not the sort of 'overreaching' that implicates the Due Process Clause, as long as the subterfuge used is not one likely to produce an untrue statement." *Oursbourn v. State*, 259 S.W.3d 159, 182 (Tex. Crim. App. 2008); *Rodriquez v. State*, 934 S.W.2d 881, 890–91 (Tex. App.—Waco 1996, no pet.) (explaining that the voluntariness of a confession is not destroyed, and a confession induced by deception or trickery, is not inadmissible, unless the method used was calculated to produce an untruthful confession or was offensive to due process); *Snow v. State*, 721 S.W.2d 943, 946 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (same).

11

*Buchanan*, 207 S.W.3d at 775.  Accordingly, we hold that Ensley has not preserved this issue for our review, and we overrule his sole issue.

## V.  CONCLUSION

Having overruled Ensley's sole issue, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 19, 2025